

# THE ATTORNEY GENERAL

## OF TEXAS

**CRAWFORD C. MARTIN**
**ATTORNEY GENERAL**

AUSTIN, TEXAS 78711

February 15, 1967

Mr. Coke R. Stevenson, Jr.
Administrator
Texas Liquor Control Board
Austin, Texas

Opinion No. M-26

Re: Is the Texas Liquor Control
Board authorized to issue a
carrier's permit to an air-
line company holding a certi-
ficate of convenience and
necessity issued by the
Civil Aeronautics Board of
the United States, even though
it does not hold a like certi-
ficate from the Railroad Com-
mission of Texas or the Inter-
state Commerce Commission of
the United States?

Dear Mr. Stevenson:

You have requested an opinion from this office on the
above captioned question.

Article 666-15(12) of Vernon's Penal Code provides, in
part, as follows:

> "(12) Carrier Permit. The word 'carrier'
> when used in this Section shall mean and
> include water carriers, airplane lines, all
> steam, electric, and motor power railway
> carriers, and common carrier motor carriers
> operating under a certificate of convenience
> and necessity issued by the Railroad Commission
> of Texas or by certificates issued by the
> Interstate Commerce Commission. The holders
> of such certificates shall be authorized to
> transport liquor into and out of this State
> and between points within this State. Such
> carriers shall furnish such information con-
> cerning the transportation of liquor as may
> be required by the Board."

The Texas Liquor Control Act was passed in 1935 with the
words "airplane lines" not included in Article 666-15(12). In
1937 the Texas Legislature amended this section to include
"airplane lines", but did not amend the requirement that all
such carriers be holders of certificates of convenience and

- 109 -

necessity from either the Texas Railroad Commission or the Interstate Commerce Commission. Subsequent amendments have not, to this date, changed this requirement as to airplane lines.

The Texas Railroad Commission was established by statute in 1891 to regulate railroads in Texas. Since that time the activities of the Railroad Commission have been broadened to include motor carriers on State highways, oil and gas, and gas companies. The Railroad Commission has not, since its inception in 1891, had any statutory authority over "airplane lines".

The Interstate Commerce Act of 1887, 24 U.S. Stat.L. 379, created the Interstate Commerce Commission to regulate transportation by common carrier of passengers or property when made wholly by railroad or partly by railroad and partly by water when both are used. An amendment in 1917, 40 U.S. Stat.L. 101, gave the Interstate Commerce Commission the power to establish reasonable rules and regulations. A further amendment in 1920, 41 U.S. Stat.L. 474, expended coverage to include oil pipe lines and wire or wireless communication. This 1920 amendment also called for issuance of certificates of public convenience and necessity.

Jurisdiction of the Interstate Commerce Commission was also extended by the Motor Carrier Act of 1935, 49 U.S. Stat.L. 543. Section 207(a) of that Act called for the issuance of certificates of public convenience and necessity. The Transportation Act of 1940, 54 U.S. Stat.L. 898, again modified the Interstate Commerce Commission, but did not increase the areas under the Commission's control.

Federal control over aviation began with the Air Commerce Act of 1926, 44 U.S. Stat.L. 568. The provisions of this Act were to be enforced by the Secretary of the Department of Commerce, with full powers to provide for the issuance of any type of certificate he deemed necessary.

In the Civil Aeronautics Act of 1938, 52 U.S. Stat.L. 973, Congress created the Civil Aeronautics Authority and transferred all officers and personnel hired by the Secretary of Commerce under the Air Commerce Act of 1926 to this new Authority.

This 1938 Act provided in Sec. 401(a) that "no air carrier shall engage in air transportation unless there is in force a certificate issued by the Authority authorizing such." Sec. 401(d) provided for the "Issuance of Certificate if such transportation is required by public convenience and necessity." Sec. 701(a) created the Air Safety Board to operate independent of the Authority in the area of air safety.

This division of responsibility led to a reorganization in 1940 which saw certain functions of the Civil Aeronautics Authority transferred to an Administrator of Civil Aeronautics. Only those functions dealing with air safety and the Air Safety Board were excepted from this initial reorganization. A second reorganization saw the Administrator of Civil Aeronautics and the Air Safety Board transferred to the Department of Commerce. Finally, as a part of this second step, the Civil Aeronautics Board was created out of the combined functions of the Air Safety Board and what remained of the Civil Aeronautics Authority. The Civil Aeronautics Board as part of its duties was to initiate investigation of aircraft accidents, prescribe safety rules and preside over hearings looking to the suspension and revocation of certificates. The Air Safety Board and Civil Aeronautics Authority were effectively abolished by this reorganization.

In 1958 Congress passed the Federal Aviation Act, 49 U.S.C.A. §§ 1301 et seq., which created the Federal Aviation Agency, §§ 1341-1355, to assume the duties and function of the Civil Aeronautics Administration; and which brought the Civil Aeronautics Board, §§ 1321-1325, under its jurisdiction. Section 1371(a) of the Federal Aviation Program provides that no air carrier shall engage in any air transportation unless there is in force a certificate of public convenience and necessity issued by the Board (Civil Aeronautics Board) authorizing such air carrier to engage in such transportation.

The foregoing analysis of statutory authority shows that the Texas Railroad Commission and the United States Interstate Commerce Commission have never had the authority to issue certificates of public convenience and necessity to "airplane lines." At present only the Civil Aeronautics Board of the United States exercises this function in interstate commerce. This Board was established in 1940, but its predecessors in responsibility had their beginning in 1926, separate and apart from the Interstate Commerce Commission. Thus, it cannot be said that the Civil Aeronautics Board has "inherited" any of its powers from the Interstate Commerce Commission.

It is apparent that the Texas Legislature intended for the Texas Liquor Control Board to have authority to issue permits under Article 666-15(12) to "airplane lines" when it amended the statute in 1937. In view of the fact, as outlined above, that the Interstate Commerce Commission and the Railroad Commission never had the authority to issue certificates of convenience and necessity to "airplane lines", this 1937 amendment needed the additional requirement, with respect to "airplane lines",

that the applicant have a certificate of convenience and necessity from the federal or state agency authorized to issue same. When literal enforcement of a statute would lead to consequences which the Legislature could not have intended, the statute should be given a construction which will promote the declared purpose of the legislation. Baldridge v. State, 321 S.W.2d 309 (Tex.Crim. 1959). Therefore, it is the opinion of this office that the Texas Liquor Control Board is authorized to issue a Carrier's Permit as defined in Article 666-15(12), Vernon's Penal Code, to an airline company holding a Certificate of Public Convenience and Necessity issued by the Civil Aeronautics Board of the United States, even though it does not hold a Certificate of Convenience and Necessity from the Railroad Commission of Texas or such certificate issued by the Interstate Commerce Commission of the United States.

## SUMMARY

> The Texas Liquor Control Board is authorized to issue a Carrier's Permit as defined in Article 666-15(12), Vernon's Penal Code, to an airline company holding a Certificate of Public Convenience and Necessity issued by the Civil Aeronautics Board of the United States, even though it does not hold a Certificate of Convenience and Necessity from the Railroad Commission of Texas or such certificate issued by the Interstate Commerce Commission of the United States.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by James H. Quick
Assistant Attorney General
:vmo

APPROVED:

OPINION COMMITTEE

Hawthorne Phillips, Chairman
W. V. Geppert, Co-chairman
Paul Martin
Linward Shivers
Houghton Brownlee, Jr.
W. O. Shultz

A. J. CARUBBI, JR.
Staff Legal Assistant